Plaintiff's Name _THOMAS ARTHUR GANDARA_

Prisoner No. _BM0710_

Institutional Address _SALINAS VALLEY STATE PRISON_

_P.O. BOX 1050_

_SOLEDAD CA. 93860_

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| _THOMAS ARTHUR GANDARA_<br>*(Enter your full name)*<br>v.<br><br>_CALIFORNIA_<br>_RIVERSIDE COUNTY, CA._<br>_RIVERSIDE COUNTY SHERIFF'S DEPT._<br>_SEE ATTACHED LIST OF DEFENDANTS_<br>*(Enter the full name(s) of all defendants in this action)* | Case No._____<br>*(Provided by the clerk upon filing)*<br><br><br>**COMPLAINT BY A PRISONER**<br>**UNDER THE CIVIL RIGHTS ACT,**<br>**42 U.S.C. § 1983** |

## I. Exhaustion of Administrative Remedies.

*You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.*

**A.** Place of present confinement _SALINAS VALLEY STATE PRISON_

**B.** Is there a grievance procedure in this institution? ☒ **YES**          ☐ **NO**
_@ RIVERSIDE COUNTY JAIL_

**C.** If so, did you present the facts in your complaint for review through the grievance procedure?
☒ **YES**          ☐ **NO** _AT THE RIVERSIDE COUNTY JAIL I DID ARGUE MY_
_4TH & 8TH AMENDMENT RIGHTS WERE VIOLATED_

**D.** If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

1.   Informal appeal: _ORAL REQUEST TO BE MOVED WAS_
_DENIED._

2.   First formal level: _NEVER GIVEN AN APPEAL NUMBER_
_RIVERSIDE JAIL DOES NOT PROVIDE APPEAL NUMBER_
_ON OR ABOUT SEPTEMBER 3, 2019, DENIED · SAID NO RIGHTS VIOLATED_

3.   Second formal level: _IN SEPTEMBER 2019_

_DENIED - SAID NO RIGHTS WERE BEING VIOLATED_

4.   Third formal level: _NO THIRD LEVEL AVAILABLE AT_

_THE RIVERSIDE COUNTY JAIL._

4b) REMOVED FROM ACTIONABLE CONDITIONS BY COURT ORDER ON
OR ABOUT FEBRUARY 13, 2020.

E.  Is the last level to which you appealed the highest level of appeal available to you?
☑ **YES**        ☐ **NO**

F.  If you did not present your claim for review through the grievance procedure, explain why.

## II. Parties.

A.  If there are additional plaintiffs besides you, write their name(s) and present address(es).

_SINGLE PLAINTIFF LAW SUIT_

B.  For each defendant, provide full name, official position and place of employment.

| | | |
|---|---|---|
| GAVIN NEWSOME | GOVERNOR OF CALIFORNIA | SACRAMENTO, CA |
| CHAD BIANCO | SHERIFF OF RIVERSIDE CA. | RIVERSIDE CA. |
| PSYCHIATRIST (NAME UNKNOWN) | TREATING PSYCHIATRIST | RIVERSIDE CA. |
| TIMOTHY J. HOLLENHORST | JUDGE CA. SUPERIOR COURT | BANNING CA. |
| EMMA C. SMITH | JUDGE CA. SUPERIOR COURT OF RIVERSIDE CA. | RIVERSIDE CA. |

(SEE ATTACHED LIST OF DEFENDANTS)

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

_SEE ATTACHED 26 PAGE_

_STATEMENT OF CLAIM &_

_REQUEST FOR TOLLING OF TIME LIMITATIONS_

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

SEE ATTACHED  2 PAGE

REQUESTED RELIEF

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:  JUNE 27, 2021
         *Date*                        *Signature of Plaintiff*

II. PARTIES

DEFENDANTS

| | | |
|---|---|---|
| MICHAEL A. HESTRIN | RIVERSIDE COUNTY DISTRICT ATTORNEY | RIVERSIDE CA. |
| AMBER LEE ZEXLER | DEPUTY DIST. ATTN. RIVERSIDE COUNTY | RIVERSIDE CA. |
| STEVEN HARMON | RIVERSIDE COUNTY PUBLIC DEFENDER | RIVERSIDE CA. |
| MONICA NGUYEN | DEPUTY PUB. DEF. RIVERSIDE CA. | RIVERSIDE CA. |
| LIAM HARRISON | DEPUTY PUB DEF. RIVERSIDE CA. | BANNING CA. |
| FEMALE CLINICIAN (NAME UNKNOWN) | PSYCHIATRIC TECHNICIAN | RIVERSIDE CA. |
| LIEUTENANT (NAME UNKNOWN) | RIVERSIDE COUNTY SHERIFF'S DEPT. | RIVERSIDE CA. |
| 2 SARGEANTS (NAME UNKNOWN) | RIVERSIDE COUNTY SHERIFF'S DEPT. | RIVERSIDE CA. |
| DEPUTY VARGUS | RIVERSIDE COUNTY SHERIFF'S DEPT. | RIVERSIDE CA |
| DEPUTY KIDD | RIVERSIDE COUNTY SHERIFF'S DEPT. | RIVERSIDE CA. |
| DEPUTY ASSIGNED TO LIBERTY PROGRAM | RIVERSIDE COUNTY SHERIFF'S DEPT. | RIVERSIDE CA. |

ALL OTHERS WHO HAVE LIABILITY IN THIS CAUSE OF ACTION

III STATEMENT OF CLAIM

1) CLAIMED VIOLATIONS OF LAW

A) I HAVE A 4TH (FOURTH) AMENDMENT VIOLATION OF PRIVACY — THAT IS AN ILLEGAL SEARCH AND SEIZURE AT AN UNPRECEDENTED LEVEL. I WAS HOUSED IN A TWO-MAN CELL BY MYSELF WITH A CAMERA INSIDE THE CELL, WATCHING MY EVERY MOVEMENT 24 (TWENTY-FOUR) HOURS A DAY. THIS LASTED FOR A TOTAL OF 91 (NINTY-ONE) DAYS. FIRST, A 43 (FORTY-THREE) DAY PERIOD, THEN WHEN I RETURNED FROM THE STATE HOSPITAL, FOR ANOTHER 48 (FORTY-EIGHT) DAYS.

B) I HAVE AN 8TH (EIGHTH) AMENDMENT VIOLATION OF CRUEL AND UNUSUAL PUNISHMENT. AFTER HAVING BEEN DECLARED INCOMPETANT TO STAND TRIAL BY THE COURTS AND MADE A CIVIL COMMITTMENT I WAS PLACED IN A TWO-MAN CELL, BY MYSELF, WITH A CAMERA IN IT FOR A TOTAL OF 91 (NINTY-ONE) DAYS. THE CAMERA IN MY CELL DID CAUSE SEVERE PSYCHOLOGICAL TRAUMA. I DEVELOPED SEVERE ANXIETY, LOSS OF SELF-ESTEEM, FEELINGS OF SELF-CONSCIOUSNESS (THAT IS SHAME, GUILT, LIKE I WASN'T A GOOD HUMAN BEING WORTHY OF HUMAN SOCIETY), FEELING LIKE I WAS AN ANIMAL BEING WATCHED AT A ZOO, AND STRONG FEELINGS OF PARANOIA BEGAN TO SET-IN. IT TOOK ABOUT SIX MONTHS FOR THESE FEELINGS, TO, MOSTLY, DISAPPATE. HOWEVER, TODAY IS JUNE 21, 2021, MORE THAN 16 (SIXTEEN) MONTHS SINCE I WAS MOVED OUT OF THE LAST CELL WITH A CAMERA, AND SOMETIMES I STILL HAVE THESE LINGERING FEELINGS, ONLY NOW IN MUCH MORE MODERATION.

C) I HAVE A 1ST (FIRST) AMENDMENT VIOLATION. WHEN I WROTE PROTECTED CORRESPONDENCE TO THE JUDGE (EMMA C. SMITH) AND TO THE DEPUTY DISTRICT ATTORNEY (AMBER LEE ZEXLER) THE ILLEGAL CAMERA IN MY CELL WAS RECORDING EVERYTHING I WROTE IN THIS LEGALLY PROTECTED

III P.2

CONFIDENTIAL CORRESPONDENCE.

D) I BELIEVE I WAS SENT TO THE STATE HOSPITAL AS "RETALITORY ACTION UNDER THE COLOR OF AUTHORITY" BY MY MANAGING CASE PSYCHIATRIST FOR COMPLAINING VIGOROUSLY ABOUT THE CAMERA IN MY CELL BEING ILLEGAL AND HAVING A NEGATIVE PSYCHOLOGICAL EFFECT ON ME. AT ONE POINT IN AN INTERVIEW WITH THE PSYCHIATRIST SHE TOLD ME, "A PRISONER HAS NO RIGHT TO PRIVACY." MY UNDERSTANDING IS THAT A PRISONER/PATIENT DOES HAVE A RIGHT TO PRIVACY, BUT IT IS A LIMITED EXPECTANCY TO PRIVACY. A CAMERA IN MY CELL WAS AN AGGREGIOUS VIOLATION OF MY 4TH (FOURTH) AMENDMENT, COMPLETELY NULLIFYING ANY RIGHT TO PRIVACY WHAT-SO-EVER.

E) I WAS PART OF AN "ILLEGAL HUMAN STUDY" IN RIVERSIDE COUNTY, CALIFORNIA. NOT WITHSTANDING ANY OTHER PURPOSE THESE ILLEGAL RECORDINGS ARE BEING USED FOR, IT IS CERTAINLY INFERRED THE TAPED RECORDINGS IN THE PATIENCE HOUSING CELL ARE BEING USED FOR PSYCHOLOGICAL EVALUATION AND DIAGNOSES. THIS IN AND OF ITSELF IS AN "ILLEGAL HUMAN STUDY" IN THESE UNITED STATES OF AMERICA.

') STATEMENT OF FACTS:

I) ON OR ABOUT JULY 5, 2019, AFTER SEVERAL MONTHS OF PSYCHOLOGICAL EVALUATIONS, AND PROCEEDINGS I WAS DECLARED INCOMPETANT TO STAND TRIAL BY THE RIVERSIDE COUNTY SUPERIOR COURT; JUDGE EMMA C. SMITH RMH-42 (RIVERSIDE MENTAL HEALTH COURTROOM 42). I WAS ORDERED TO THE CALIFORNIA DEPARTMENT OF MENTAL HEALTH FOR A RESTORATION OF COMPETANCY PROGRAM.

II) UP TO THIS POINT I HAD BEEN HOUSED IN THE RIVERSIDE COUNTY ADMINISTRATIVE

VII p-3

SEGREGATION UNIT FOR MY OWN PROTECTION. I HAD BEEN A MEMBER OF A PRISON GANG 'NORTHERN STRUCTURE' FROM 1991-1997, BUT DROPPED-OUT AND WENT THROUGH A DEBRIEFING PROCESS AT PELICAN BAY STATE PRISON IN 1997-1998. IT IS MY UNDERSTANDING THE CALIFORNIA STATE SECURITY UNIT (S.S.U.) HAS ME CLASSIFIED AS A 'RELIABLE INFORMANT', AS WELL AS 'A HIGH RISK TARGET.' NORTHERN STRUCTURE IS A PRISON GANG MOSTLY MADE UP OF NORTHERN CALIFORNIA HISPANIC INMATES. BEING ARRESTED IN RIVERSIDE COUNTY POSED A SECURITY RISK BECAUSE EVEN IN RIVERSIDE COUNTY GENERAL POPULATION PROTECTIVE HOUSING UNIT THE MAKE-UP OF FORMER SOUTHERN AFFILIATED HISPANIC GANG MEMBERS POSED A REASONABLE THREAT TO ME. I ASKED FOR/ ASSENTED TO ADMINISTRATIVE SEGREGATION HOUSING ON THE DAY OF MY ARREST FEBRUARY 4, 2012; I HAD TO INFORM RIVERSIDE COUNTY JAIL I AM A NORTHERN STRUCTURE DROP-OUT. THIS HOUSING INFORMATION IS NECESSARY BECAUSE ILLEGAL HOUSING (A CAMERA IN MY CELL) IS THE FOUNDATION TO MY CLAIM TO CAUSE OF ACTION.

III) WHILE HOUSED IN THE RIVERSIDE COUNTY JAIL FOR ABOUT 3½ (THREE AND ONE HALF) YEARS TOTAL I NEVER HAD A BEHAVIORAL PROBLEM. NO WRITE-UPS, AND NO UNRULY OR PSYCHOTIC BEHAVIOR OF ANY KIND. MY INCOMPETENT TO STAND TRIAL RULING WAS BASED ON MY CLAIM TO AN EXTRA-ORDINARY DEFENSE UNDER CA. P.C. §26, TO THE BURGLARY I AM INCARCERATED FOR, I WAS EVENTUALLY GRANTED A 'ROMERO HEARING' AND SENTENCED TO 17 (SEVENTEEN) YEARS.

IV) ON OR ABOUT JULY 5, 2019, WHEN I WAS FOUND 'INCOMPETENT TO STAND TRIAL' I WAS HOUSED IN A PROTECTIVE CUSTODY CELL (TWO-MAN CELL BY MYSELF) IN ADMINISTRATIVE SEGREGATION. THE COURT HAD GIVEN RIVERSIDE COUNTY 90(NINETY) DAYS TO TRANSFER ME TO THE CALIFORNIA MENTAL HEALTH SYSTEM. I REMAINED IN THIS SAME AD-SEG.

VII p-4

(ADMINISTRATIVE-SEGREGATION) UNTIL AUGUST 22, 2018. EARLY THAT MORNING APPROXIMATELY 2:00-3:00 A.M. I WAS TOLD OVER THE IN CELL INTERCOM TO ROLE MY BELONGINGS UP I WAS BEING TRANSFERRED. EVENTUALLY I WAS TOLD I WAS BEING MOVED UPSTAIRS, TO THE FIFTH FLOOR

V) ON THE 5TH (FIFTH) FLOOR OF THE MAIN JAIL IN RIVERSIDE COUNTY, CITY OF RIVERSIDE, IS ANOTHER AD-SEG. UNIT. THIS AD-SEG. UNIT HOUSES THE MOST SEVERE MENTALLY ILL PRISONERS IN RIVERSIDE COUNTY. THEY HAVE WELDED BARS ON THE SECOND FLOOR RAILING TO PREVENT ANYONE FROM BEING ABLE TO JUMP OVER THE RAILING AND HURT THEMSELVES.

LI) IN EACH OF THESE 20 (TWENTY) CELLS, 10 (TEN) CELLS ON THE BOTTOM AND 10 (TEN) CELLS ON THE TOP FLOOR, THERE ARE CAMERAS. ONE CAMERA IN EACH OF THESE 20 (TWENTY) TWO-MAN CELLS. EACH PATIENT/INMATE IS HOUSED BY HIMSELF. THESE CELLS ON THE FIFTH FLOOR IN RIVERSIDE COUNTY ARE NUMBERED 44-63 (FORTY-FOUR THRU SIXTY-THREE). EVEN NUMBERED CELLS 44-62 ON THE BOTTOM FLOOR AND ODD NUMBERED CELLS 45-63 ARE ON THE TOP FLOOR. THERE IS ALSO ANOTHER POD NEXT-DOOR ON THE FIFTH FLOOR WHICH HAS ANOTHER 20 (TWENTY) CELLS WITH CAMERAS INSIDE THEM. THESE CELLS ARE NOT AD-SEG CELLS AND DO HOUSE TWO MEN IN EACH OF THEM. THE CONTROL BOOTH TO THIS FLOOR IS EQUIPED WITH COMPUTERS AND COMPUTER SCREENS WHICH ARE MONITORING ALL FORTY OF THESE CELLS, SIMULTANEOUSLY. THEY ARE USING SPLIT-SCREEN COMPUTER MONITORS WHICH ARE CLEARLY VISIBLE WHEN YOU ENTER OR EXIT THESE PODS. ONE OR TWO OF THE MONITORS ROTATE FROM CELL TO CELL ON A TIMED SEQUENCE TO PROVIDE A LARGER AND CLEARER LOOK AT THE INMATE/PATIENT WHILE THEY ARE IN THEIR HOUSING AND SLEEPING QUARTERS.

III p-5

VII) I WAS TRANSFERRED TO THE FIFTH FLOOR IN THE MAIN JAIL OF RIVERSIDE COUNTY ON OR ABOUT THE MORNING OF AUGUST 27, 2019. THE CELL WAS "FILTHY" FROM THE PREVIOUS INMATE/PATIENT. I ASKED A DEPUTY HARGUES FOR CLEANING SUPPLIES. HE RETURNED 15-30 MINUTES LATER WITH A GREEN SCRUB PAD AND A CUP OF BLEACH, 12-14 OUNCES. I SPENT SEVERAL HOURS SCRUBBING THE CELL AND TOILET. WITHIN A DAY OR TWO I BEGAN COMPLAINING TO THE HOUSING DEPUTIES ABOUT THE CAMERA IN MY CELL. I WAS ORIGINALLY HOUSED IN CELL #53 (FIFTY-THREE) ON THE FIFTH FLOOR. CELL 53 IS LOCATED ON THE UPPER TIER. THE SHERIFF DEPUTIES THAT I SPOKE WITH CONFIRMED THE CAMERA IN MY CELL AND ACTED AS THOUGH THERE WAS NOTHING WRONG WITH A CAMERA BEING IN MY CELL. THE FIRST TIME I WAS ALLOWED OUT OF MY CELL TO SHOWER I CHECKED WITH ANOTHER PATIENT/INMATE TO CONFIRM THERE WAS ALSO A CAMERA INSIDE HIS CELL. THERE WAS, AND THERE ARE CAMERAS IN ALL 20 (TWENTY) OF THE CELLS IN THAT POD. I DO RECALL CONFIRMING THE CAMERA IN CELL #51 (FIFTY-ONE) WITH AN INMATE/PATIENT NAMED JACKSON JONES. I WILL DISCUSS INMATE/PATIENT JACKSON JONES A LITTLE MORE LATER IN THIS STATEMENT OF FACTS. EVENTUALLY, I WAS ABLE TO GET A FEW OTHER INMATE/PATIENTS TO CONFIRM A CAMERA IN THEIR CELL. THE CAMERA IN EACH OF THESE 40 (FORTY) CELLS, 20 (TWENTY) IN EACH POD IN AN INDISPUTABLE FACT. IT SHOULD BE UNDERSTOOD MOST OF THE INMATES/PATIENTS IN THIS POD HAVE "SEVERE" PSYCHOLOGICAL DISORDERS AND COMMUNICATION BETWEEN INMATES/PATIENTS ON THIS POD IS VASTLY DIFFERENT THAN COMMON JAIL/PRISON PODS OR YARDS I HAVE BEEN ON. SOME OF THESE INMATES/PATIENTS ARE DESPONDENT AND DON'T COMMUNICATE MUCH AT ALL, OTHERS HAVE DISORDERS WHICH ARE SO APPARENT AND SEVERE THAT LITTLE COMMUNICATION TAKES PLACE WITH OTHER INMATES/PATIENTS. IT WOULD "APPEAR" MOST ARE AT A STAGE OF CIVIL COMMITTMENT OR ARE GOING THROUGH THE PROCESS TO BE MADE CIVIL COMMITTMENTS

III p-6

BECAUSE OF THEIR PSYCHOLOGICAL DIS-ORDERS, MANY OF THESE INMATES/PATIENTS
CAN NOT ADEQUATELY PROTECT THEIR OWN CIVIL RIGHTS AND NEED
SOMEONE TO HELP THEM,

K) I WAS TRANSFERRED TO THIS POD BECAUSE OF THE COURT ORDER DEEMING ME TO
BE `INCOMPETANT TO STAND TRIAL' AND THEREFORE MY PLACEMENT IN
THIS POD AND IN A CELL WITH A CAMERA IN IT MUST BE RECOGNIZED
AS PART OF MY PUNISHMENT. THUS, ACTIVATING THE `CRUEL AND UNUSUAL
PUNISHMENT' CLAUSE OF THE 8TH AMENDMENT TO THE UNITED STATES
OF AMERICA CONSTITUTION.

X) I BELIEVE IT WAS WITHIN 2 (TWO) DAYS ALTHOUGH IT MAY HAVE BEEN 3 (THREE)
DAYS. I WAS CALLED OUT OF MY CELL TO AN INTERVIEW ROOM OUTSIDE THE POD.
I WAS TAKEN THERE AND ESCORTED BACK TO MY CELL IN HAND-CUFFS. THE
INTERVIEW ROOM KEEPS THE PATIENT/INMATE SEPARATED FROM THE VISTOR
THROUGH SECURITY PLEXIGLASS. IN THIS INTERVIEW I `MET WITH A PSYCIATRIC
TECHNICIAN, COMMONLY REFERRED TO AS A PSYCH. TECH. I DON'T RECALL HER
NAME BUT HENCEFORTH WILL CALL HER PSYCH. TECH. #1. [MY COMMUNICATION
WITH PSYCH. TECH #1, OVER THE COURSE OF TIME, FORMS MY BASES FOR
`RETALIETORY ACTION UNDER THE COLOR OF AUTHORITY' BY THE PSYCHIATRIST
OF RECORD] AT THIS INITIAL INTERVIEW WITH PSYCH. TECH. #1 I WAS TOLD
I HAD BEEN TRANSFERRED TO THE FIFTH FLOOR TO PARTICIPATE IN A
`RESTORATION TO COMPETANCY' PROGRAM. THE NAME OF THE PROGRAM IS
CALLED `LIBERTY'. IT IS MY UNDERSTANDING IT IS A CALIFORNIA MENTAL
HEALTH SYSTEM APPROVED PRIVATE RESTORATION TO COMPETANCY PROGRAM
RAN IN THE COUNTY JAILS. THE OBJECTIVE, IN ADDITION TO RESTORATION
OF COMPETANCY IS TO SAVE THE STATE MONEY BY RESTORING COMPETANCY

VII p.-7

WHILE IN THE COUNTY JAIL, NOT HAVING TO TRANSFER THE PATIENT AND HOUSE THEM IN THE STATE HOSPITAL, WHICH I WAS GIVEN TO UNDERSTAND IS CONSIDERABLY HIGHER IN COST.

I WAS TOLD BY PSYCH. TECH. #1 THAT IT WAS A 6 (SIX) WEEK PROGRAM AND AT ITS SUCCESSFUL COMPLETION I WOULD BE SENT BACK FOR REGULAR CRIMINAL PROCEEDINGS TO BE COMPLETED. I MAY HAVE COMPLAINED OF THE CAMERA TO PSYCH. TECH. #1 AT THIS FIRST MEETING BUT I AM NOT 100% POSITIVE. HOWEVER, AT SUBSEQUENT MEETINGS WITH PSYCH. TECH. #1 I REPEATEDLY COMPLAINED ABOUT THE CAMERA IN MY CELL, TELLING HER IT WAS CAUSING ANXIETY AND FEELINGS OF SELF-CONSCIOUSNESS [SHAME, GUILT, AND UNWORTHY]. I REMEMBER PSYCH. TECH. #1 SAYING SHE COULD NOT DO ANYTHING ABOUT MY HOUSING LOCATION, THAT I WOULD HAVE TO DEAL WITH IT AT THE CUSTODY LEVEL. [THAT IS WITHIN THE JAIL AND THE SHERIFF'S CLASSIFICATION PROCESS]

XI) I DON'T BELIEVE I NEED MEDICATION FOR A PSYCHOLOGICAL DIS-ORDER AND REFRAIN SO FAR AS I AM ABLE. HOWEVER, THE COURT HAD ORDERED ME TO TAKE MEDICATION WHEN I WAS FOUND 'INCOMPETANT TO STAND TRIAL.' I DEDUCED THE FASTER I COMPLETED THIS 'LIBERTY' RESTORATION TO COMPETANCY PROGRAM AND RETURNED TO 'CRIMINAL PROCEEDINGS' THE SOONER I COULD STOP TAKING MEDICATION. IT WAS SIX WEEKS OF MEDICATION IN THE 'LIBERTY' PROGRAM AS OPPOSED TO FOUR TO SIX MONTHS IF I WAS SENT TO THE STATE HOSPITAL FOR RESTORATION OF COMPETANCY. I COMPLIED WITH ALL REQUIREMENTS OF THE 'LIBERTY' PROGRAM WITH NO PROBLEMS, HOWEVER, I CONSISTANTLY COMPLAINED TO PSYCH. TECH. #1 AND TO THE TREATING PSYCHIATRIST, VIRTUALLY, IF NOT IN FACT, AT EACH AND EVERY INTERVIEW I HAD. I KEPT INSISTING THE CAMERA IN MY CELL WAS ILLEGAL AND THAT I WAS HAVING NEGATIVE PSYCHOLOGICAL MANIFESTATIONS (EMOTIONS) CAUSED BY THE CAMERA IN MY CELL

III p-8

MOSTLY, I COMPLAINED OF ANXIETY AND FEELINGS OF SELF-CONSCIOUSNESS [SHAME, GUILT, UNWORTHINESS]. I DO REMEMBER, AT TIMES DOWN PLAYING THE PSYCHOLOGICAL TRAUMA I WAS EXPERIENCING BECAUSE THE ONLY WAY TO GET AWAY FROM THE CAMERA WAS TO SUCCESSFULLY COMPLETE THE` RESTORATION TO COMPETANCE PROGRAM

(III) AFTER A WEEK TO TEN DAYS, IN 5B-53, I FILED A GRIEVANCE THROUGH THE RIVERSIDE COUNTY SHERIFF'S APPEAL PROCESS. I THINK, THIS FIRST GRIEVANCE MAY HAVE BEEN DATED ON OR ABOUT SEPTEMBER 3, 2019. THERE ARE ONLY TWO LEVELS OF REVIEW FOR APPEALS IN THE RIVERSIDE COUNTY JAIL. THE FIRST LEVEL IS A SARGEANTS REVIEW AND THE SECOND LEVEL IS A LIEUTENANTS REVIEW.
IN THIS FIRST GRIEVANCE I CITED MY 4TH (FOURTH) AMENDMENT WAS BEING VIOLATED. I SAID THEY WERE VIOLATING MY RIGHT TO BE FREE OF ILLEGAL SEARCH AND SEIZURE. I ALSO STATED MY 8TH (EIGHTH) AMENDMENT WAS BEING VIOLATED BECAUSE THE PSYCHOLOGICAL TRAUMA I WAS SUFFERING; ANXIETY, PARANOIA, AND FEELINGS OF SELF-CONSCIOUSNESS CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT CAUSED BY THE 4TH (FOURTH) AMENDMENT VIOLATION. THE LIMITED SPACE PROVIDED ON THE GRIEVANCE FORM DID NOT ALLOW ME ROOM TO DETAIL ALL OF THE PSYCHOLOGICAL TRAUMA I WAS SUFFERING. THE SARGEANT DENIED THE GRIEVANCE TO BE RE-HOUSED IN A LOCATION WITHOUT A CAMERA IN THE CELL. I BELIEVE HE SAID MY CONSTITUTIONAL RIGHTS WEREN'T BEING VIOLATED.
I THEN FILED A SECOND GRIEVANCE WRITING ON IT ATTENTION CAPTAIN OR LIEUTENANT AND 2nd LEVEL APPEAL. I BASICALLY WROTE THE SAME THING ON THE 2nd LEVEL, AS I HAD ON THE FIRST LEVEL APPEAL. THE LIEUTENANTS 2nd LEVEL RESPONSE WAS A DENIAL, BASICALLY THE SAME AS THE FIRST LEVEL RESPONSE.

II P-9

I DID, IN FACT, EXHAUST THE APPEALS PROCESS AVAILABLE TO ME AT THE
RIVERSIDE COUNTY JAIL.

III) IT COMES TO MIND, IN ONE CONVERSATION WITH THE TREATING PSYCHIATRIST WHEN I
WAS TALKING ABOUT THE CAMERA AND THE PSYCHOLOGICAL TRAUMA IT WAS CAUSING
SHE (MY CASE PSYCHIATRIST) SAID THEY COULD HAVE CAMERAS IN THE CELLS BECAUSE
THIS IS A MENTAL HEALTH UNIT. SHE WAS INFERRING THAT THE LEGAL
STANDARDS OF A COUNTY JAIL DON'T APPLY HERE BECAUSE IT IS GOVERN BY
MENTAL HEALTH CARE STANDARDS. [I AM POSITIVE THE HEALTH AND SAFETY CODES
DO NOT ALLOW THESE CONSTITUTIONAL VIOLATIONS.] IN OTHER CONVERSATIONS
PERHAPS WITH ONE OF THE SHERIFF DEPUTIES OR PSYCH. TECH. #1 IT WAS BROUGHT
UP THAT BECAUSE OF THE PATIENTS/INMATES MENTAL DIS-ORDERS THERE WAS AN
ELEVATED RISK OF SELF-HARM. THUS, ATTEMPTING TO JUSTIFY THE 4TH (FOURTH)
AMENDMENT VIOLATION BECAUSE OF AN ELEVATED RISK OF SUICIDE ATTEMPT.
THIS POD AND THESE CELLS WERE NOT AND ARE NOT TEMPORARY SUICIDE HOLDING
CELLS, THESE ARE PERMANENT HOUSING CELLS. AT NO TIME IN MY LIFE HAVE I EVER
BEEN DIAGNOSED OR IDENTIFIED WITH HOMICIDAL OR SUICIDAL IDEATIONS.
AT NO TIME IN THE RIVERSIDE COUNTY JAIL DID I HAVE ANY SUICIDAL IDEATION
OR SUICIDE ATTEMPT NOR DID I EVER SHOW A PROCLIVITY TOWARDS VIOLANCE
OR SELF-HARM IN ANY WAY. I WAS SENT TO THIS POD TO ENTER AND
COMPLETE THE 'LIBERTY' RESTORATION TO COMPETANCY PROGRAM, PER COURT
ORDER ON OR ABOUT JULY 5, 2019, DEEMING ME TO BE INCOMPETANT TO
STAND TRIAL AND ORDER CALIFORNIA MENTAL HEALTH SYSTEM TO
RESTORE ME TO COMPETANCY.

IV) WHILE FILING AND WAITING FOR THESE GRIEVANCES TO BE ANSWERED I WAS WORKING
ON AND CONTINUING THROUGH THE 'LIBERTY' RESTORATION TO COMPETANCE PROGRAM.

III P-10

THERE WERE SOME PAPERS TO BE STUDIED AND LEARNED ABOUT THE COURT PROCESS THEN SOME ORAL TESTING BY PSYCH. TECH. #1, TO BE SURE I UNDERSTOOD THE PROPER COURT PROCESS. I ALSO HAD TO TURN IN A PACKET OF WORK SHEETS ON THE COURT PROCEDURES AND PROCESS. DURING THIS TIME I MET WITH PSYCH. TECH. #1 ON A WEEKLY BASIS, IN THE SAME INTERVIEW CELL OUTSIDE THE POD. I ALSO, HAD TWO OR THREE INTERVIEWS WITH THE TREATING PSYCHIATRIST, WHO PRESCRIBED MANDATORY MEDICATION. EACH TIME I TALKED WITH PSYCH. TECH. #1 I MENTIONED THE CAMERA, MY POSITION THAT THE CAMERA IS A VIOLATION OF LAW, AND THAT THE CAMERA WAS CAUSING MY PSYCHOLOGICAL PROBLEMS; ANXIETY AND FEELINGS OF SELF-CONSCIOUSNESS [GUILT, SHAME, EMBARRASSMENT, AND LOW-SELFWORTH]. OTHER THAN THE PROBLEMS THE CAMERA WAS CAUSING I TOLD PSYCH. TECH. #1 EVERYTHING ELSE WAS OKAY.

WHILE TRYING TO GET OUT OF THIS LIVING SITUATION I REALIZED I ALSO NEEDED TO SUCCESSFULLY COMPLETE THE 'LIBERTY' RESTORATION TO COMPETENCY PROGRAM.

IN THE FIRST MEETING OR TWO WITH THE PSYCHIATRIST I ALSO MENTIONED THE CAMERA AND THE FACT THAT I BELIEVED THEM TO BE ILLEGAL. I DO BELIEVE I ALSO MENTIONED THE FEELINGS OF ANXIETY AND SELF-CONSCIOUSNESS BEING CAUSED BY THE CAMERA. THE PSYCHIATRIST INITIALLY SEEMING TO 'SHRUG OFF' [GIVE NO MERIT] MY COMPLAINTS INCLUDING THE FACT I WAS HAVING PSYCHOLOGICAL ISSUES CAUSED BY THE CAMERA. THE PSYCHIATRIST BASICALLY SAID 'THIS IS JAIL AND JUST THE WAY IT IS. [SOMETHING TO THAT BASIC GIST.]

IV) NOW, I NEED TO EXPLAIN PSYCH. TECH. #1 AND I TALKED FAIRLY WELL IN OUR INTERVIEWS. PSYCH. TECH. #1 EXPLAINED ABOUT THIS 'LIBERTY' PROGRAM AND THE

VII P-11

FACT SHE HAD BEEN WORKING IN THE 'LIBERTY' PROGRAM SINCE ITS INCEPTION IN THE RIVERSIDE COUNTY JAIL, APPROXIMATELY FIVE YEARS PRIOR. SHE (PSYCH. TECH. #1) ALSO SAID SHE HAD BEEN A PSYCH. TECH. IN THE CALIFORNIA STATE MENTAL HOSPITAL SYSTEM FOR TWENTY OR TWENTY-FIVE YEARS PRIOR TO GOING TO WORK FOR THIS 'LIBERTY' PROGRAM. [ I BELIEVE 'LIBERTY' IS SOMETHING SIMILAR TO A PRIVATE H.M.O. (HOSPITAL MEDICAL ORGANIZATION)] PSYCH. TECH. #1 ALSO SAID THAT MY TREATING PSYCHIATRIST WAS NEW TO THE 'LIBERTY' PROGRAM IN RIVERSIDE COUNTY. THIS IS IMPORTANT BECAUSE A BIT OF A POWER STRUGGLE SEEMED TO DEVELOP IN WEEKS 4-6.

(VI) AFTER THREE TO FOUR WEEKS EVERYTHING SEEMED FINE IN MY PROGRESS THROUGH THE 'LIBERTY' PROGRAM AND PSYCH. TECH. #1 WAS TALKING ABOUT SENDING ME BACK TO CRIMINAL COURT PROCEEDINGS AS SOON AS I COMPLETED THE MANDATORY SIX WEEK PROGRAM. I DID CONTINUE TO COMPLAIN ABOUT THE CAMERA AND THE PSYCHOLOGICAL EFFECT THAT IT WAS CAUSING.

(VII) I BELIEVE I MENTIONED THERE WERE TWO SHERIFF DEPUTIES ASSIGNED TO SECURITY AND ESCORT OF 'LIBERTY' PATIENTS. [ THIS WAS A SPECIAL ASSIGNMENT SPECIFICALLY TO THE 'LIBERTY' PROGRAM, THERE WERE OTHER DEPUTIES FOR SECURITY OF HOUSING AND MOVING OTHER PRISONERS AROUND THE JAIL AS WAS NECESSARY ON A DAILY BASIS]. THESE ASSIGNED DEPUTIES TALK AND WORK CLOSELY WITH THE PSYCH. TECHS. AND SOMETIMES THE PSYCHIATRIST. THESE DEPUTIES AS WELL AS THE HOUSING DEPUTIES ALSO FORM AN OPINION ABOUT THE PATIENTS.

WELL, I HAD COMPLAINED TO SOME OF THESE DEPUTIES ABOUT THE CAMERA, AND THEY WERE AWARE I HAD FILED A COUPLE OF GRIEVANCES. BY WEEK FOUR IN THE 'LIBERTY' PROGRAM BOTH MY GRIEVANCES HAD BEEN DENIED. I HAD ALSO GOTTEN TO KNOW THE ASSIGNED DEPUTIES, A LITTLE. I REMEMBER COMPLAINING TO ONE OF THESE

III P-12

"LIBERTY" ASSIGNED DEPUTIES. I BELIEVE HE HAD ALSO TALKED WITH PSYCH. TECH. #1.
HE BELIEVED I WAS GOING TO GRADUATE THE "LIBERTY" PROGRAM AND BE SENT
BACK TO CRIMINAL PROCEEDINGS AS SOON AS THE SIX WEEKS WERE COMPLETED.
IT WAS COMMONLY UNDERSTOOD I WAS COMPLAINING AND HAD A PROBLEM
WITH THE CAMERA IN MY CELL. ONE DAY, I BELIEVE IT WAS IN WEEK FOUR,
THIS DEPUTY SHERIFF (NAME UNKNOWN) ASSIGNED TO THE "LIBERTY" PROGRAM TOLD
ME, AT MY CELL DOOR, THAT HE HAD TALKED TO HIS SARGEANT, AND THE SARGEANT
HAD AGREED THAT AS SOON AS I COMPLETED THE "LIBERTY" PROGRAM I WOULD
BE RE-HOUSED IN ANOTHER PART OF THE JAIL WITHOUT A CAMERA IN MY CELL.
IT WAS UNDERSTOOD I WOULD GO BACK TO AD-SEG., WERE I WAS BEFORE
BEING MOVED TO THE FIFTH FLOOR, 5B CELL #53, WITH A CAMERA IN MY CELL.


(VIII) AGAIN, I BELIEVE IT WAS WEEK FOUR OF THIS "LIBERTY" PROGRAM, I HAD AN INTERVIEW
WITH THE TREATING PSYCHIATRIST. BY THIS TIME I BELIEVE MY SECOND LEVEL APPEAL
HAD BEEN DENIED, ALTHOUGH THE PSYCHIATRIST AND PSYCH.TECH.E DIDN'T SAY ANYTHING ABOUT
MY GRIEVANCES I AM POSITIVE THEY WERE AWARE. IN MY PREVIOUS MEETING WITH
THE PSYCHIATRIST WE HAD HAD SOME DISAGREEMENT (MILD) ABOUT THE CAMERA IN MY CELL
SHE HAD TOLD ME THAT "THIS IS A MENTAL HEALTH WARD, WE CAN HAVE CAMERAS IN
THESE CELLS." [PARA-PHRASED]
IN THIS MEETING SHE BEGAN THE MEETING WITH SOMETHING LIKE "ARE YOU OK?,
ANYTHING WRONG?" I WENT IN TO COMPLAINING ABOUT THE CAMERA AND THE
PSYCHOLOGICAL EFFECT IT WAS HAVING, ESPECIALLY THE ANXIETY AND FEELINGS OF
SELF-CONSCIOUSNESS [SHAME, GUILT, EMBARRASSMENT, AND LOW SELF-WORTH]. THE
DOCTOR (PSYCHIATRIST) DIDN'T WANT TO HEAR ABOUT IT. SHE TRIED TO CUT ME OFF
AND I KEPT COMPLAINING SAYING THE CAMERA IS ILLEGAL AND A VIOLATION OF
MY PRIVACY. THE PSYCHIATRIST GOT ANGRY AND CUT ME OFF SAYING, "A PRISONER
HAS NO RIGHT TO PRIVACY WHILE IN JAIL." [VIRTUALLY VERBATIM]. AT THIS POINT

III P-13

I REALIZED THERE WAS NO POINT COMPLAINING ANY FURTHER. I BELIEVE WE TALKED ABOUT MY MEDICATION A LITTLE, AND THIS INTERVIEW WAS ENDED.

(IX) THE NEXT TIME I SAW PSYCH. TECH. #1, WHICH AGAIN, I BELIEVE WAS LATER IN WEEK FOUR, SHE TOLD ME SHE THOUGHT I WAS DOING WELL AND SHOULD GO BACK TO CRIMINAL PROCEEDINGS, BUT THERE MIGHT BE A LITTLE DIS-AGREEMENT WITH THE PSYCHIATRIST. PSYCH. TECH. #1 SOUNDED LIKE SHE WOULD GET IT STRAIGHTENED OUT. IT WAS CLEAR PSYCH. TECH # 1 AND THE PSYCHIATRIST WERE NOW IN DIS-AGREEMENT AND BUMPING HEADS, SO TO SPEAK, REGARDING MY CASE. BEFORE THESE LAST TWO INTERVIEWS FIRST WITH THE PSYCHIATRIST AND THEN SECOND WITH THE PSYCH. TECH. #1, I WAS BEING FAST-LINED TO GRADUATE THE PROGRAM IN SIX WEEKS.

(X) IN WEEK FIVE DURING MY INTERVIEW WITH PSYCH. TECH. # 1 IT WAS CLEAR THAT PSYCH. TECH. #1 WANTED ME TO BE GRADUATED FROM THE 'LIBERTY' PROGRAM AND SENT BACK TO CRIMINAL PROCEEDINGS, AND THAT SHE WAS HAVING A 'SERIOUS' DIS-AGREEMENT WITH THE PSYCHIATRIST. IT WAS OBVIOUS AND APPARENT TO ME THERE WAS A POWER STRUGGLE GOING ON BETWEEN PSYCH. TECH. #1 WHO HAD BEEN WORKING IN THE 'LIBERTY' PROGRAM SINCE ITS INCEPTION IN RIVERSIDE COUNTY, AND THE TREATING PSYCHIATRIST, WHO WAS NEW TO THIS 'LIBERTY' PROGRAM.
I HAVE BEEN INCARCERATED FOR MOST OF THE PAST 32 (THIRTY-TWO) YEARS AND IT IS CLEAR TO ME THE PSYCHIATRIST USED ME AS A PAWN IN HER ASSERTION OF AUTHORITY AND RANK IN THIS 'LIBERTY' PROGRAM, BECAUSE SHE WAS ANGRY WITH ME FOR VIGOROUSLY AND CONSISTANTLY COMPLAINING TO HER AND WRITING THE AFOREMENTIONED GRIEVANCES. IT REALLY DID COME DOWN TO THE PETTY, " I WILL SHOW THEM WHO IS IN CHARGE, AND IN THE PROCESS SHE WILL NOW UNDERSTAND I AM BOSS." I DID NOT NEED TO BE SENT TO THE STATE HOSPITAL, AND HER DECISION TO SEND ME TO THE STATE HOSPITAL, CLOAKED

XII P-14

UNDER THE COLOR OF AUTHORITY, WAS UNPROFESSIONAL AND MOTIVATED BY PETTY ANGER AND IRRITATION TOWARDS ME FOR STANDING-UP AND ASSERTING MY RIGHTS WERE BEING VIOLATED. THIS PSYCHIATRIST, BEING IN CHARGE, WAS ALSO LEGALLY REQUIRED TO PROTECT MY RIGHTS, AS I HAD BEEN DECLARED `INCOMPETANT TO STAND TRIAL` AND SHOULD HAVE BEEN CONSIDERED TO BE UNDER `TEMPORARY CONSERVATORSHIP`. SHE MUST BE MADE TO UNDERSTAND, "I DO HAVE A LIMITED EXPECTATION TO PRIVACY WHILE INCARCERATED", AS SHOULD RIVERSIDE COUNTY. THESE CAMERAS IN THE CELLS ARE A COMPLETE ELIMINATION OF THE 4TH FOURTH AMENDMENT AND ARE IN FACT INDUCING PSYCHOLOGICAL TRAUMA AND DIS-ORDERS.

XXI) I WOULD LIKE THIS COURT TO UNDERSTAND THAT WHILE IN RIVERSIDE COUNTY AND AFTER THE TWO AFOREMENTION GRIEVANCES HAD BEEN DENIED. I WROTE BOTH THE A.C.L.U. (AMERICAN CIVIL LIBERTIES UNION) AND DONALD SPECTRE OF THE SAN QUENTIN PRISON LAW OFFICES SEEKING ASSISTANCE FOR THIS VIOLATION. IN ADDITION, I WROTE A LETTER TO DEPUTY DISTRICT ATTORNEY AMBER LEE ZEXLER NOTING THE 4TH (FOURTH) AMENDMENT VIOLATION AND THE 8TH (EIGHTH) AMENDMENT VIOLATION. I BELIEVE I SENT A COPY OF THE LETTER TO JUDGE EMMA C. SMITH RMH-42 (RIVERSIDE MENTAL HEALTH COURTROOM 42). NO ONE WROTE ME BACK, I WAS UNABLE TO FIND ASSISTANCE OF ANY KIND.

XXII) I WOULD ALSO LIKE TO POINT OUT WHEN I WROTE ABOVE MENTIONED LETTERS TO THE A.C.L.U., DONALD SPECTRE OF THE SAN QUENTIN LAW OFFICE, DEPUTY DISTRICT ATTORNEY AMBER LEE ZEXLER, AND JUDGE EMMA C. SMITH OF THE RIVERSIDE COUNTY SUPERIOR COURT OF CALIFORNIA (R.M.H.-42) THE CAMERA IN MY CELL WAS RECORDING EVERY THING I WROTE. I CAN'T

III p-15

BE SURE OF THE ZOOM CAPABILITIES OF THE CAMERA, HOWEVER, THE RIVERSIDE COUNTY JAIL IN RIVERSIDE HAS A STATE OF THE ART SOPHISTICATED VIDEO AND AUDIO RECORDING SYSTEM. THE RIVERSIDE MAIN JAIL HAS CAMERAS IN ALL HALLWAYS AND COMMON INMATE BATHROOMS AND ROOMS THROUGH-OUT THE JAIL, NOT ONLY IS IT RECORDING BUT THERE IS A COMPUTERIZED STORING SYSTEM. IN ADDITION THE PHONE CALLS ARE RECORDED AND STORED. THEY HAVE AN IN CELL CLOSED-CIRCUIT AUDIO SYSTEM THROUGH-OUT THE JAIL AS WELL. ALTHOUGH I CAN'T BE POSITIVE, IT WAS A COMMON BELIEF AMONG INMATES IN RIVERSIDE THAT THIS CLOSED-CIRCUIT AUDIO SYSTEM WAS ALSO BEING RECORDED AND STORED. MY PRIVATE LEGAL WRITINGS ARE PROTECTED CONFIDENTIAL CORRESPONDENCE BY 1ST (FIRST) AMENDMENT RULINGS. THE RECORDINGS OF MY PROTECTED LEGAL CORRESPONDENCE IS A CLEAR AND VERY SERIOUS VIOLATION OF MY 1ST (FIRST) AMENDMENT RIGHTS GUARANTEED BY THE UNITED STATES OF AMERICA CONSTITUTION.

XII) IN WEEK SIX THE PSYCHIATRIST CAME TO SEE ME THE DAY BEFORE MY TRANSFER. SHE WAS, IN TRUTH AND FACT, A BIT SMUG. SHE WAS OOZING TRIUMPH. I COULD TELL SHE HAD WON THE DEBATE WITH PSYCH. TECH. #1. SHE STARTED TO TELL ME I WAS GOING TO BE SENT TO THE STATE HOSPITAL, BUT STOPPED HERSELF SHORT, SAYING `I'LL LET PSYCH. TECH. #1 TELL YOU. ONCE AGAIN, MAKING IT APPARENT SHE WAS TAKING DOWN `TWO-BIRDS` WITH ONE STONE. THAT IS PUTTING BOTH ME AND PSYCH. TECH. #1 IN OUR PLACES.

XIV) THE NEXT MORNING I WAS TRANSFERRED TO METROPOLITAN STATE HOSPITAL IN LOS ANGELES COUNTY WITHOUT EVER SEEING PSYCH. TECH. #1 AGAIN. ALSO, WITHOUT ACTUALLY

III P-16

HAVING BEEN TOLD BY MENTAL HEALTH CARE STAFF THAT I WAS BEING SENT TO THE STATE HOSPITAL.

(XX) DURING MY FIRST STAY IN THIS POD (5B-53 WHEN I CAME BACK FROM THE STATE HOSPITAL I WAS HOUSED IN 5B-49) WITH THE CAMERA IN MY CELL THE EFFECT IT HAD ON ME CAN BE DEMONSTRATED ON THE TAPED RECORDINGS. WHEN I FIRST WENT TO 5B-53 I WAS FEELING FINE. I WAS WORKING OUT ON A REGULAR BASIS. FOUR TO FIVE DAYS A WEEK. WHEN I FIRST WENT TO 5B-53 I INITIALLY ATTEMPTED TO MAINTAIN THIS ROUTINE WHICH KEPT ME IN SHAPE AND FEELING GOOD ABOUT MYSELF. HOWEVER, THE ANXIETY, SHAME, GUILT, EMBARRASSMENT, AND LOW SELF-ESTEEM BEGAN TO SET IN. I WAS NOT ABLE TO URINATE OR DEFECATE IN PRIVACY BECAUSE THE CAMERA LOOKS DIRECTLY DOWN TOWARDS THE SINK AND TOILET. I STARTED FEELING SHAME AND EMBARRASSMENT ABOUT TAKING A `BIRD-BATH´ UNDER THE CAMERA WHICH LOOKED DIRECTLY DOWN ON ME, [IN MY `BIRD-BATH´ I WOULD USE A WET AND SOAPY WASH CLOTHE TO WASH THE DIRT AND PRESPERATION OFF MY BODY.] IN CELL 5B-53 THE TOP-BUNK COVERED THE LOWER BUNK, MOSTLY, FROM THE CAMERA. [LATER, WHEN I WAS PLACED IN 5B-49 THE POSITIONING OF THE BUNK BEDS HAD THE CAMERA LOOKING DIRECTLY IN TO THE BED,(LOWER BUNK), WITH NO COVER WHAT-SO-EVER. I WILL WILL DISCUSS MY STAY IN 5B-49 A LITTLE LATER IN THIS STATEMENT OF FACTS] I HAVE DONE SEVERAL YEARS INCARCERATED AND KNOW MASTERBATION TO BE NORMAL HUMAN BIOLOGY. WHEN I WAS IN 5B-53 I WOULD MASTERBATE IN THE LOWER BUNK BECAUSE OF THE LITTLE COVER THE TOP BUNK PROVIDED. ALTHOUGH, I KNOW MASTERBATION TO BE NORMAL HUMAN BEHAVIOR I FEELINGS OF SEVERE SHAME, GUILT, AND LOW SELF-WORTH WHEN I WOULD MASTERBATE, I ALSO HAD FEELINGS OF PARANOIA, THINKING THEY (SHERIFFS, DOCTORS, MENTAL HEALTH CARE) WERE LOOKING THROUGH THE CAMERA WHEN I WAS MASTERBATING. MOST TIMES WHEN I MASTERBATED IT WAS DIFFICULT TO EJACULATE, AND MANY TIMES I WAS UNABLE TO

III P-17

EJACULATION AT ALL, BECAUSE OF THESE AFOREMENTIONED FEELINGS AND EMOTIONS. I REMEMBER ONCE OR TWICE TRYING TO COVER THE CAMERA SO THEY COULD NOT SEE IN MY CELL AND EACH TIME, WITHIN 3 TO 5 MINUTES, A DEPUTY CAME OVER THE IN CELL INTERCOM TELLING ME NOT TO COVER THE CAMERA. AS THE FIRST SIX WEEK STAY WORE ON I BEGAN EXERCISING LESS AND LESS. BY THE END OF THIS FIRST SIX WEEK STAY I HARDLY WORKED-OUT AT ALL. MY SELF-ESTEEM WAS SO LOW AND THE FEELINGS OF SHAME AND GUILT OF HAVING TO TAKE A "BIRD-BATH" NUDE UNDER THE CAMERA PULLED ME TOWARDS LISTLESSNESS. I WOULD TRY TO READ IN MY CELL BUT HAD TROUBLE WITH CONCENTRATION. SOMETIMES, I WOULD LOSE TRACK OF THE PLOT, AND WOULD HAVE TO GO BACK AND REFRESH MYSELF ON WHAT WAS GOING ON. I HAVE ALWAYS BEEN A VORACIOUS READER, SINCE I WAS 6-7 YEARS OLD. I FOUND MY SPEED SLOWING DRAMATICALLY, AND MY FOLLOWING AND UNDERSTANDING OF THE BOOKS I READ "POOR AT BEST," BY MY STANDARDS.


XVI) AT THIS POINT I SHOULD MENTION INMATE/PATIENT JACKSON JONES, CELL #51 [5B-51] ONCE AGAIN. I BELIEVE THE CAMERAS WERE HAVING AN EFFECT ON MANY OF THE INMATE/PATIENTS BEING WATCHED WITH A CAMERA IN THEIR CELL. I USED TO WALK BY INMATE/PATIENT JACKSON JONES CELL DURING SHOWER TIME AND OFTEN (SEVERAL TIMES) SEE HIM MASTERBATING. IT WAS AS THOUGH THE CAMERA HAD BROKE DOWN ANY INHIBITIONS HE MAY HAVE ONCE HAD. HE OFTEN WALKED AROUND HIS CELL COMPLETELY NUDE, KNOWING HE WAS ON CAMERA. I RECALL, SHORTLY AFTER I HAD ARRIVED IN THIS POD, WEEK 1 OR 2, HEARING INMATE/PATIENT JACKSON JONES JOKING WITH A DEPUTY SHERIFF KIDD. I MISSED DEP. KIDD'S FIRST WORDS. HE HAD SAID SOMETHING TO INMATE/PATIENT JACKSON TO STOP MASTERBATING WHEN HE, DEP. KIDD, WAS ON THE TIER. INMATE/PATIENT JACKSON JONES SAID SOMETHING LIKE "I AM MASTER BATES" AND THAT THEY WATCHED HIM MASTERBATE ON CAMERA ANYWAY. DEP. KIDD KIND OF LAUGHED AND SAID "THAT YOU ARE." REFERRING TO INMATE/PATIENT

III P-18

JACKSON JONES BEING `MASTER BATES`. IT WAS CLEAR INMATE/PATIENT JACKSON JONES KNEW HE WAS BEING WATCHED ON CAMERA WHEN HE MASTERBATED IT WAS CLEAR JACKSON JONES WAS CONSCIOUSLY AWARE OF THE CAMERA IN HIS CELL AND THAT IS EXHIBITIONISM WAS A PLAY TO THE CAMERA. THIS CAMERA IN HIS CELL WAS, IN TRUTH AND FACT, CAUSING OR WORSENING A PSYCHOLOGICAL DIS-ORDER IN INMATE/PATIENT JACKSON JONES.

XVII) ON ANOTHER OCCASION, WHEN I CAME BACK FROM THE METROPOLITAN STATE HOSPITAL FOR MY SECOND STAY IN THIS POD, (5B-49). I RECALL ANOTHER INMATE/PATIENT ON THE TIER DURING HIS SHOWER TIME. HE GOT UP ON A TABLE, ON THE BOTTOM TIER, AND STARTED MASTERBATING TO THE DEPUTIES WHO WERE IN THE CONTROL BOTH BEHIND A MIRRORED-GLASS WINDOW WALL. THE COMPUTER MONITORS WHICH WATCH ALL THE INMATE/PATIENT CELLS ARE BEHIND THIS MIRRORED WALL IN THE CONTROL BOTH. THIS INMATE/PATIENT GOT UP ON THE TABLE, LAYING DOWN ON HIS BACK, AND STARTED MASTERBATING LIKE HE WAS MAKING AN ADULT VIDEO. IT SEEMED HE WAS SAYING TO THE DEPUTIES `HERE YOU WANT TO WATCH ME WHILE I AM IN MY CELL, WELL NOW, WATCH ME. IT WAS CLEAR TO ME THAT THIS INMATE/PATIENT HAD A SEVERE PSYCHOLOGICAL DIS-ORDER, HOWEVER, IT IS ALSO CLEAR TO ME THIS EXAGGERATED EXHIBITIONISM WAS AN EXPRESSION OF HIS PSYCHOLOGICAL DIS-ORDER ENHANCED BY THE CAMERA IN HIS CELL.

XVIII) THESE CAMERAS IN THE CELLS DO NOTHING TO MAKE A PSYCHOLOGICAL DIS-ORDER BETTER AND IN MOST CASES CAUSE AN ENHANCEMENT OR PRE-EXISTING PSYCHOLOGICAL DIS-ORDERS, IN TRUTH AND FACT, I BELIEVE THESE CAMERAS ARE ACTUALLY THE CAUSE OF NEW PSYCHOLOGICAL DIS-ORDERS. THESE CAMERAS APPEAR TO BE BREAKING DOWN INHIBITIONS IN THESE INMATE/PATIENTS, INHIBITIONS THAT ARE FORMED AND RE-INFORCED BY THIS SOCIETY'S VALUES, ETHICS, MORALS, AND LAWS.

III P-19

xxix) THESE INMATE/PATIENTS NEED SOMEONE TO PROTECT THEM, NOW, JUST AS I NEED HELP AND COULD FIND NONE WHEN I WAS IN RIVERSIDE COUNTY. IF THE FEDERAL GOVERNMENT DOESN'T STEP IN AND TAKE ACTION AGAINST CALIFORNIA AND RIVERSIDE COUNTY, NO-ONE IS GOING TO. THESE INMATES/PATIENTS WILL CONTINUE TO BE ABUSED, AND HAVE THEIR CIVIL RIGHTS VIOLATED.

xx) ON OCTOBER 3, 2019, I WAS TRANSFERRED FROM THE RIVERSIDE COUNTY JAIL TO THE METROPOLITAN STATE HOSPITAL, IN LOS ANGELES COUNTY, CALIFORNIA. [ MY TELEPHONE BOOK WAS LOST IN TRANSFER AND GIVEN TO ME AT M.S.H. ] AGAIN, I WAS TOLD THE PROGRAM WAS DESIGNED TO BE COMPLETED WITHIN SIX WEEKS, AT EARLIEST, BUT REALISTICALLY IT TAKES A LITTLE LONGER. I WENT THROUGH THE PROGRAM AS FAST AS WAS POSSIBLE. IT TOOK ME ABOUT 7 (SEVEN) WEEKS, THEN I HAD TO WAIT APPROXIMATELY 5 (FIVE) MORE WEEKS WAITING FOR TRANSFER BACK TO THE RIVERSIDE COUNTY JAIL.

xxi) AGAIN, AT THE METROPOLITAN STATE HOSPITAL MY OBJECTIVE IS TO GET OFF THE COURT ORDERED MEDICATION AND BACK TO CRIMINAL PROCEEDINGS AS QUICKLY AS POSSIBLE. THE PATH IS TO NOT MAKE TOO MANY WAVES AND JUST REMAIN ANOTHER FACELESS PATIENT, JUST PASSING THROUGH. I STILL FELT SEVERE ANXIETY AT TIMES AS WELL AS SHAME, GUILT, EMBARRASSMENT, FEELINGS OF LOW SELF-WORTH, AND A LITTLE PARANOIA, BUT I DIDN'T SAY TOO MUCH TO THE STAFF. THE MEDICATION DIDN'T FEEL GOOD IN MY BRAIN, AND I WANTED OFF THE MEDICATION AS SOON AS POSSIBLE. I DID COMPLAIN ABOUT THE FEELINGS OF ANXIETY, BUT I KEPT THE OTHER FEELINGS TO MYSELF. I WAS GIVEN A "SCHIZO-AFFECTIVE" DIAGNOSES AND SENT ON MY WAY BACK TO COURT. I WAS TRANSFERRED BACK TO RIVERSIDE COUNTY JAIL ON DECEMBER 31, 2019. ON JANUARY 1, 2020, I WAS RE-HOUSED IN THE SAME POD WITH CAMERAS IN THE CELLS. THIS TIME I WAS HOUSED IN 5B-49.

III P-20

(XXII) I HAD BEEN FOUND COMPETANT TO STAND TRIAL BY METROPOLITAN STATE HOSPITAL
BUT STILL HAD TO GO THROUGH COURT PROCEEDINGS TO BE OFFICIALLY DEEMED
COMPETANT BY THE CALIFORNIA SUPERIOR COURT OF RIVERSIDE COUNTY. I WAS
RE-HOUSED IN 5B-49 (FIFTH FLOOR, CELL FORTY-NINE) WITH ANOTHER CAMERA
IN MY CELL. I WAS AN INMATE/PATIENT WHO SHOULD STILL BE LEGALLY
RECOGNIZED AS 'TEMPORARILY CONSERVED' BY THE CALIFORNIA SUPERIOR
COURT SYSTEM. I HAD NO SAY IN MY HOUSING, WHAT-SO-EVER. THIS IS WHERE
RIVERSIDE COUNTY IS HOUSING SEVERAL DISABLED MENTAL HEALTH INMATES/PATIENTS.
THOSE WHOM HAVE BEEN DEEMED INCOMPETANT TO STAND TRIAL, ARE CURRENTLY
GOING THROUGH THE COURT PROCEEDINGS TO BE FOUND 'INCOMPETANT TO STAND TRIAL,'
AND THOSE GOING THROUGH THE 'LIBERTY' MENTAL HEALTH 'RESTORATION TO
COMPETANCY' PROGRAM.

(XXIII) I BELIEVE, I WAITED UNTIL I WENT BACK TO COURT IN FRONT OF JUDGE EMMA C. SMITH
[COURTROOM MHR-42] AND WAS OFFICIALLY FOUND COMPETANT TO STAND TRIAL
BY THE CALIFORNIA SUPERIOR COURT OF RIVERSIDE COUNTY, BEFORE I FILED ANOTHER
GRIEVANCE REQUESTING TO BE RE-HOUSED IN A CELL WITHOUT A CAMERA.

(XXIV) ONCE AGAIN, I CITED A 4TH (FOURTH) AMENDMENT VIOLATION RISING TO AN 8TH (EIGHTH)
AMENDMENT VIOLATION OF CRUEL AND UNUSUAL PUNISHMENT BECAUSE I WAS SUFFERING
PSYCHOLOGICAL TRAUMA CAUSED BY THE CAMERA. I TOLD THEM THE CAMERA WAS CAUSING
SEVERE ANXIETY AND FEELINGS OF SELF-CONSCIOUSNESS. PLEASE, REMEMBER MY FIRST
TWO GRIEVANCES (THAT IS LEVEL 1 AND LEVEL 2) ON THESE SAME ISSUES ARE ON
FILE WITH THE RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

(XXV) NOW, FOR 'SOME REASON' RIVERSIDE COUNTY FAILED TO FOLLOW ITS OWN GRIEVANCE
PROCEDURES. INSTEAD OF THE SARGEANT RESPONDING TO AND FILING MY

XIII P-21

APPROPRIATELY, IN ACCORDANCE WITH THE SHERIFF'S DEPARTMENTS POLICY AND PROCEDURES, A DEPUTY HARGUES RESPONDED TO MY GRIEVANCE. DEP. HARGUES TOLD ME HIS SARGEANT HAD INSTRUCTED HIM TO ANSWER MY GRIEVANCE. THE GRIEVANCE WAS NOT PROPERLY FILED. DEPUTY HARGUES RETURNED BOTH COPIES TO ME, I COMPLAINED TO DEPUTY HARGUES ABOUT THE FACT I WANTED THE 'DENIED' GRIEVANCE PROPERLY FILED. HE RESPONDED BY SAYING HE WOULD INFORM HIS SARGEANT. AS I RECALL, SOME COMMUNICATION BETWEEN DEPUTY HARGUES AND I TOOK PLACE FACE TO FACE, AT MY DOOR, AND SOME TOOK PLACE OVER THE IN CELL INTERCOM SYSTEM. I DO ALSO REMEMBER DEPUTY HARGUES SITTING DOWN AT AN INMATE/PATIENT TABLE ON THE UPPER TIER OF THE POD I WAS IN AND ACTUALLY WROTE THE DENIAL RESPONSE WERE I WAS ABLE TO SEE HIM OUT MY DOOR WINDOW. [THIS MAY BE POSSIBLY VERIFIED BY THE POD VIDEO AND RECORDING SYSTEM]

(XXVI) IN THE DENIED GRIEVANCE BY DEPUTY HARGUES HE STATED: MY PAST/CURRENT MEMBER OF A NORTENO AFFILIATED GANG WOULD POSE A THREAT TO MY OWN SAFETY IF I WAS MOVED TO ANOTHER POD ON THE SECOND FLOOR. [I HAD SPENT SIX MONTHS IN THAT 2ND (SECOND) FLOOR POD(UNIT) BEFORE FIRST BEING MOVED TO THE FIFTH FLOOR. IN TOTAL I HAD SPENT 2½ (TWO AND A HALF) YEARS IN AD-SEG. AROUND THE VERY SAME INMATES I WAS NOW BEING TOLD REPRESENTED A DIRECT THREAT TO MY PERSONAL SAFETY]

(XXVII) MY STAY IN A CELL WITH A CAMERA IN IT, THIS SECOND TIME, WAS NOT ALL THAT DIFFERENT THAN THE FIRST. I HAD SEVERE ANXIETY, FEELINGS OF SHAME, GUILT, EMBARRASSMENT, AND LOW SELF-WORTH. THIS TIME I WAS MUCH MORE LISTLESS, NOT WANTING TO DO MUCH EXERCISING

III p-22

AT ALL. I MOSTLY TRIED TO OCCUPY MY TIME READING ALL DAY. AS I
SAID MY READING WAS SLOWER, CONCENTRATION BROKEN, AND HAD SOME
PROBLEMS FOLLOWING PLOTS OF THE BOOKS. I DO REMEMBER IN CELL 49
THAT THE CAMERA LOOKED DOWN DIRECTLY "INTO" THE LOWER BUNK.
I DID NOT HAVE AN PRIVACY TO MASTERBATE. I RECALL HANGING A
SHEET FROM THE TOP BUNK SO THE CAMERA COULD NOT LOOK "INTO"
THE LOWER BUNK WHEN I NEEDED TO MASTERBATE, HOWEVER, ON
MULTIPLE OCCASIONS A DEPUTY CALLED THROUGH THE INTERCOM
SYSTEM TELLING ME TO PULL DOWN THE SHEET. THIS SITUATION CAUSED
SEVERE SHAME, GUILT, AND EMBARRASSMENT. IT ALSO MADE ME FEEL LIKE
AN ANIMAL IN A CAGE, LESS THAN HUMAN. THIS CAMERA ATTACKED MY
HUMAN DIGNITY, HUMAN RESPECT, AS WELL AS MY SELF-RESPECT.

(XXVIII) I WAS GOING THROUGH THIS GRIEVANCE PROCESS AND BACK TO CRIMINAL PROCEEDINGS
IN BANNING CALIFORNIA. [THE RIVERSIDE COUNTY SUPERIOR COURT THAT MY
CRIMINAL PROCEEDINGS WERE HELD IN WAS IN BANNING CALIFORNIA]
I HAD ASKED, MY, DEPUTY PUBLIC DEFENDER LIAM HARRISON FOR A HABEUS
CORPUS FORM BECAUSE I WANTED TO FILE IT WITH THE APPEALS COURT TO
BE MOVED OUT OF A CELL WITH A CAMERA IN IT. DEP. P.D. HARRISON SAID THAT
HIS OFFICE DIDN'T PROVIDE HABEUS CORPUS FORMS BUT HE WOULD CHECK
IF HE COULD FIND ONE. SOON AFTER I HAD FILED THE GRIEVANCE THAT WAS
ANSWERED INAPPROPRIATELY BY DEP. HARGUIS, I WENT BACK TO COURT. I
ASKED DEP. P.D. HARRISON IF HE HAD GOTTEN ME A HABEUS CORPUS FORM,
I HAD ALREADY COMPLAINED TO DEPUTY PUBLIC DEFENDER HARRISON
ABOUT THE CAMERA IN MY CELL AND THE PSYCHOLOGICAL TRAUMA IT WAS
CAUSING ME. I DID SO AGAIN AT THIS COURT HEARING. DEP. P.D. HARRISON
TOLD ME HIS OFFICE DID NOT HAVE ANY HABEUS CORPUS FORMS AVAILABLE. HOWEVER,

II p-23

DEP. P.D. HARRISON SUGGESTED TO ME IF IT WOULD BE OKAY IF HE JUST FILED AN ORAL MOTION AT THIS TIME, IN FRONT OF JUDGE TIMOTHY I. HOLLANDHORST. I SAID, "YES, PLEASE DO."

(XXIX) THIS COURT DATE WAS ON OR ABOUT FEBRAURY 13, 2020, DEP. P.D. HARRISON DID FILE SAID ORAL MOTION WITH NO OPPOSITION FROM THE DISTRICT ATTORNEY'S OFFICE. IN THE ORAL ARGUMENT DEP. P.D. HARRISON STATED (PARA-PHRASED) I WAS IN A CELL WITH A CAMERA IN IT, THAT IT WAS CAUSING ME ANXIETY, FEELINGS OF SELF-CONSCIOUSNESS AND OTHER PSYCHOLOGICAL TRAUMA.' [I BELIEVE DEP. P.D. HARRISON DID SAY 'AND OTHER PSYCHOLOGICAL TRAUMA.'] DEP. P.D. HARRISON TOLD JUDGE HOLLANDHORST THAT I WAS ASKING FOR A COURT ORDER TO BE MOVED TO A CELL WITHOUT A CAMERA IN IT.

(L) JUDGE TIMOTHY I. HOLLANDHORST DID GRANT THE MOTION, (HOWEVER, JUDGE HOLLANDHORST WORDS WERE 'I WILL ORDER THE SHERIFF'S DEPARTMENT EVALUATE HIS CLASSIFICATION AND SEE IF HE IS SUITABLE FOR RE-HOUSING [PARA-PHRASED]. TRANSCRIPT SHOULD BE AVAILABLE UPON A DISCOVERY MOTION.

(LI) I DO ASSERT THAT THE GRANTING OF THIS ORAL MOTION BY JUDGE HOLLANDHORST DOES INFER THAT JUDGE TIMOTHY I. HOLLANDHORST DID RECOGNIZE THAT A CAMERA IN MY CELL WAS A 4TH (FOURTH) AMENDMENT VIOLATION, AT THE VERY LEAST.

(LII) THIS COURT DATE ON OR ABOUT FEBRAURY 13, 2020, WAS ON A THURSDAY, THE FOLLOWING MONDAY, ON OR ABOUT FEBRAURY 17, 2020, I WAS TOLD TO ROLL-UP MY PROPERTY. I WAS MOVED BACK TO THE SECOND FLOOR AD-SEG. CELLS THAT DID

III p-24

NOT HAVE CAMERAS.

XLIII) THE FEELINGS OF ANXIETY, SHAME, GUILT, EMBARRASSMENT, LOW SELF-ESTEEM, LOSS OF HUMAN DIGNITY, AND SOME PARANOIA WERE STILL VERY STRONG FOR THE FIRST THREE MONTHS THEN STARTED TO GRADUALLY FADE. BY THE TIME I LEFT THE RIVERSIDE COUNTY JAIL, ON SEPTEMBER 10, 2020, THE FEELINGS HAD LESSENED, SOMEWHAT. NOW, JUNE 24, 2021, THEY ARE MOSTLY GONE BUT I STILL FEEL SHAME, GUILT, AND EMBARRASSMENT, AS WELL AS ANXIETY AND A LITTLE PARANOIA, OCCASIONALLY.

(LIV) WHAT I HAVEN'T YET SAID, IS THAT THE JUDGES, DISTRICT ATTORNEY'S OFFICE, PUBLIC DEFENDER'S OFFICE, SHERIFF'S DEPARTMENT OF RIVERSIDE COUNTY, AND MENTAL HEALTH CARE SERVICES OF RIVERSIDE COUNTY, CALIFORNIA ARE ALL AWARE OF THESE CAMERAS ILLEGALLY PLACED INSIDE THESE FORTY CELLS OF THE FIFTH FLOOR, IN RIVERSIDE, CA. WHENEVER I TALKED TO ANYONE ABOUT IT INCLUDING THE MENTAL HEALTH STAFF I GOT THE IMPRESSION THE CAMERAS WERE BEING PLAYED DOWN. ALMOST AS IF THEY ARE CONSCIOUSLY KEEPING THESE CAMERAS AS HUSH-HUSH AS THEY CAN. YET THEY MAINTAIN NO WRONG DOING. I HAVE SPENT MANY YEARS INCARCERATED, AND TO MY CONSCIOUS KNOWLEDGE, THIS IS THE MOST SEVERE AND EGREGIOUS VIOLATION OF PRIVACY, OPENLY DISPLAYED, THAT I HAVE EVER HEARD TAKING PLACE IN AN INSTITUTIONAL SETTING. I BELIEVE AS MEMBERS OF THE COURT, LAW ENFORCEMENT, AND MENTAL HEALTH CARE STAFF THAT EACH ONE OF THE INDIVIDUALS WHO I INFORMED, OR WHO HAD KNOWLEDGE OF THESE CAMERAS IN THE INMATE/PATIENT CELLS HAD AN ABSOLUTE LEGAL RESPONSIBILITY, IN KEEPING WITH `DUE DILIGENCE AND GOOD CONSCIOUS TO THE LAW,' TO TAKE IMMEDIATE STEPS TO RESOLVE THIS FLAGRANT VIOLATION OF THE LAW, AND HAVE THESE CAMERAS REMOVED FROM THESE 40 (FORTY) INMATE/PATIENT CELLS, IMMEDIATELY.

III P-25

XLV) LASTLY, I WOULD LIKE TO POINT OUT THAT THE VIDEO TAPES HAVING BEEN ILLEGALLY OBTAINED IN VIOLATION OF MY 4TH (FOURTH) AMENDMENT RIGHTS ARE IN FACT MY LEGAL PROPERTY AND INTELLECTUAL PROPERTY, HAVING BEEN USED IN AN ILLEGAL STUDY, AND TO THIS DAY, PERHAPS STILL BEING USED, I AM LEGALLY ENTITLED TO FINANCIAL COMPENSATION. IT IS INFERRED THAT THE VIDEO TAPES WERE USED IN AN ILLEGAL STUDY TO DETERMINE A PSYCHOLOGICAL DIAGNOSIS OF ME, AT THE VERY LEAST. AT WORSE, AND IN ALL PROBABILITY, THESE VIDEO TAPES ARE BEING USED ON A CONTINUOUS BASIS IN AN ILLEGAL STUDY TO ATTEMPT TO LEARN ABOUT PSYCHOSES. THIS WAS AN IS AN ILLEGAL HUMAN STUDY.

## TOLLING OF TIME LIMITATION

1) I WAS TRANSFERRED FROM THE CELL WITH AN ILLEGAL CAMERA IN IT ON OR ABOUT FEBRUARY 17, 2020. FROM THAT DAY FORWARD I DID NOT HAVE ACCESS TO A TITLE 42 U.S.C. §1983, AND THE COURT ADDRESS UNTIL SEPTEMBER 10, 2020, AT BEST, AND IN ACTUALITY UNTIL I ARRIVED IN SALINAS VALLEY STATE PRISON AND WAS RELEASED FROM QUARANTINE ON OR ABOUT DECEMBER 2, 2020.

1) RIVERSIDE COUNTY DOES NOT PROVIDE ANY LEGAL FORMS OR ADDRESSES TO INMATES AT THE JAIL. I HAD BEEN PRO-PER, FOR SOME TIME, ON MY CRIMINAL CASE. I HAD ATTEMPTED TO OBTAIN BOTH HABEUS CORPUS FORMS AND 42 U.S.C. §1983 FORMS FROM THE RIVERSIDE COUNTY SHERIFF'S LEGAL OFFICE. I WAS SENT BACK A POLICY AND PROCEDURE FORM LETTER FROM THIS LEGAL OFFICE WHICH INFORMED ME THE RIVERSIDE COUNTY SHERIFF'S PROVIDE NEITHER FORMS OR ADDRESSES OF ANY KIND TO INMATES.

1) DURING MENTAL HEALTH CARE PROCEEDINGS IN DEPARTMENT 42 I HAD ASKED MY

III p-26

THEN LAWYER, DEPUTY PUBLIC DEFENDER MONICA NGUYEN, FOR A HABEUS CORPUS FORM. [I WAS CHALLENGING A MARSDEN HEARING] DEP. P.D. NGUYEN SAID THE PUBLIC DEFENDER'S OFFICE DID NOT PROVIDE SUCH FORMS, BUT SHE WOULD CHECK. THE NEXT TIME I SAW DEP. P.D. NGUYEN SHE TOLD ME HER OFFICE DID NOT HAVE ANY HABEUS CORPUS FORMS

C) MY TELEPHONE BOOK, WITH SOME COURT ADDRESSES AND OTHER LEGAL RESOURCES ADDRESSES, WAS LOST IN TRANSIT FROM RIVERSIDE COUNTY JAIL TO THE METROPOLITAN STATE HOSPITAL, IN LOS ANGELES COUNTY. THE ADDRESS BOOK SIMPLY WAS NOT IN MY PROPERTY WHEN I RECIEVED IT, AT M.S.H.

D) IN JANUARY OR FEBRAURY 2020, I ASKED MY LAWYER, DEP. P.D. HARRISON, IF HE WOULD GET ME A HABEUS CORPUS FORM. I WANTED TO FILE ON MY ILLEGAL HOUSING. DEP. P.D HARRISON, AGAIN, TOLD ME HE DIDN'T THINK THE PUBLIC DEFENDER'S OFFICE DIDN'T HAVE ANY HABEUS CORPUS FORMS, BUT HE WOULD CHECK. WHEN I NEXT SAW DEP. P.D. HARRISON HE TOLD ME THERE WERE NO HABEUS CORPUS FORMS AVAILABLE AT THE PUBLIC DEFENDER'S OFFICE. THIS IS THE DAY DEP. P.D. HARRISON FILED AN ORAL MOTION, AS I PREVIOUSLY STATED IN MY STATEMENT OF FACTS.

) I DID NOT HAVE THE ABILITY TO ACQUIRE A 42 U.S.C. § 1983 FORM UNTIL MY TRANSFER TO THE RECEPTION CENTER AT WASCO STATE PRISON ON SEPTEMBER 10, 2020.

AT THE RECEPTION CENTER IN WASCO STATE PRISON IT IS VERY DIFFICULT TO GET TO THE LIBRARY. THUS I DID NOT HAVE A REAL OPPORTUNITY TO GET A CHAPTER 42 U.S.C. § 1983 FORM UNTIL MY RELEASE FROM QUARANTINE, HERE AT SALINAS VALLEY STATE PRISON, ON OR ABOUT DECEMBER 2, 2020.

IV. RELIEF

1) I WOULD LIKE A FEDERAL CIVIL RIGHTS LAWYER FROM THE UNITED STATES OF AMERICA JUSTICE DEPARTMENT ASSIGNED TO ASSIST AND/OR REPRESENT ME IN FURTHER LITIGATION TO THIS CLAIM, AT PLAINTIFF'S EXPENSE.

2) I WOULD LIKE $5,000.00 A DAY FOR EACH OF THE 91 (NINETY-ONE) DAYS I WAS IN A CELL WITH A CAMERA IN IT. THAT IS 43 (FORTY-THREE) ACTUAL DAYS IN CELL 5B-53, AND 48 (FORTY-EIGHT) ACTUAL DAYS IN CELL 5B-49. I AM ASKING $2,000.00 (TWO-THOUSAND) A DAY IN REAL DAMAGE AND $3,000.00 (THREE-THOUSAND) A DAY IN PUNATIVE DAMAGES, FOR A TOTAL OF $455,000.00 (FOUR HUNDRED FIFTY-FIVE THOUSAND).

3) I WOULD LIKE $3,000.00 (THREE THOUSAND) A DAY FOR PAIN AND SUFFERING WHILE I WAS AT METROPOLITAN STATE HOSPITAL FOR 90 (NINETY) DAYS. THIS PAIN AND SUFFERING WAS A RESULT OF THE TIME I HAD BEEN IN THE RIVERSIDE COUNTY JAIL CELL 5B-53. FOR A TOTAL OF $270,000.00 (TWO HUNDRED SEVENTY THOUSAND).

4) I WOULD LIKE $3000.00 (THREE THOUSAND) A DAY FOR A 180 (ONE-HUNDRED EIGHTY) DAY PERIOD DIRECTLY FOLLOWING MY LAST STAY IN A CELL [5B-49] WITH A CAMERA IN IT FOR A CONTINUED PAIN AND SUFFERING CAUSED BY THE PSYCHOLOGICAL TRAUMA I SUFFERED. THIS COMES TO A TOTAL OF $540,000.00 (FIVE-HUNDRED FORTY THOUSAND).

5) I WOULD LIKE $100,000.00 (ONE-HUNDRED THOUSAND) FOR UNCONSENTED TO USE OF MY PERSONAL AND INTELLECTUAL PROPERTY. SAID USE OF THE ILLEGALLY OBTAINED VIDEO RECORDINGS, WHICH ARE IN FACT INTELLECTUAL PROPERTY OF THIS PLAINTIFF.

IV RELIEF, PAGE 2

6) I WOULD LIKE $31.00 (THIRTY-ONE) FOR EACH OF 100 (ONE-HUNDRED) HOURS OR ACTUAL AND ANTICEPATED WORK I HAVE DONE AND WILL DO ON THIS FILING. [I WORKED AS A PLASTERER FOR $20.00 (TWENTY) AN HOUR PLUS $11.00 (ELEVEN) AN HOUR IN BENEFITS, THUS $31.00 (THIRTY-ONE) AN HOUR] THIS COMES TO A TOTAL OR $3,100.00 (THREE-THOUSAND, ONE-HUNDRED)

7) I WOULD LIKE $200.00 (TWO-HUNDRED) FOR EXPENSES OF SUPPLIES, STAMPS, ONVELOPES, PAPER, ECT.

8) I WOULD LIKE $400.00 (FOUR-HUNDRED, DOLLARS) FOR FILING COSTS OF THIS LAW SUIT.

9) I WOULD LIKE ALL IN CELL VIDEO RECORDINGS OF THOMAS ARTHUR GANDARA CALIFORNIA DRIVER'S LICENSE NUMBER A-2359250, SEIZED AND TURNED OVER TO THOMAS ARTHUR GANDARA OR DESTROYED, IMMEDIATELY

10) I WOULD LIKE MY TREATING PSYCHEATRIST (FEMALE-NAME UNKNOWN) REMOVED FROM HER LEGAL RESPONSEBILITY OVER PATIENTS IN RIVERSIDE COUNTY AS WELL AS ANY MENTAL HEALTH CARE PATIENTS OF THE STATE OF CALIFORNIA.

11) I WOULD LIKE ALL CAMERAS IN THE TWO MAN CELLS IN RIVERSIDE COUNTY REMOVED PERMANENTLY, IMMEDIATELY. THERE ARE AT LEAST 40 (FORTY) CELLS ON THE FIFTH FLOOR OF THE MAIN JAIL IN THE CITY OF RIVERSIDE THAT NEED TO HAVE CAMERAS REMOVED, IMMEDIATELY.